Darrel S. Jackson (018415)
Michelle R. Matheson (019568)
MATHESON & MATHESON, P.L.C.
15300 N. 90th Street, Suite 550
Scottsdale, Arizona 85260
(480) 889-8951
mmatheson@mathesonlegal.com
djackson@mathesonlegal.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Brice Somers, a married man, | No.: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Alpha Geotechnical and Materials, Inc., an Arizona corporation; Jim Weaver, an individual; Alf Wold and Jane Doe Wold, a married couple; | **(JURY TRIAL REQUESTED)** |
| Defendants. | |

Plaintiff Brice Somers alleges:

1.   This case arises out of Defendants' unlawful employment practices. Specifically, Defendants unlawfully failed and refused to pay Plaintiff Brice Somers overtime as required by the Fair Labor Standards Act ("**FLSA**"), 29 U.S.C. § 201 *et seq*. Defendants terminated Mr. Somers because he complained to Defendants that their pay practices were unlawful, which constituted unlawful retaliation under the FLSA. 29 U.S.C. § 215(a)(3). Further, Defendants also failed and refused to pay Mr. Somers for wages in violation of Arizona's wage statute, A.R.S. § 23-352.

-1-

2. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Mr. Somers' claims under the FLSA. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Mr. Somers' state law claim because his federal and state law claims form part of the same case and controversy.

3. This Court is the proper venue, pursuant to 28 U.S.C. § 1391, because the Defendants reside in Arizona and all of the events or omissions giving rise to Mr. Somers' claims occurred in Arizona.

**The Parties:**

4. Mr. Somers is a resident of Maricopa County, Arizona.

5. Alpha is an Arizona-based engineering consulting firm specializing in geotechnical engineering, construction materials testing, and inspection services. Alpha's headquarters are located at 2504 W. Southern Avenue, Tempe, Arizona, 85282.

6. Defendant Jim Weaver is Alpha's President and Director. He resides in Maricopa County, Arizona. He exercises significant economic control over Alpha, including control over decisions regarding how to pay Plaintiff. At all relevant times, he was a covered "employer" as defined in 29 U.S.C. § 203(d).

7. Defendant Alf Wold is Alpha's Vice President. He resides in Maricopa County, Arizona. He exercises significant economic control over Alpha, including control over decisions regarding how to pay Plaintiff. At all relevant times, he was a covered "employer" as defined in 29 U.S.C. § 203(d). Jane Doe Wold is being named as a defendant solely to bind the couple's community property, if any. Upon information

and belief, all actions of Mr. Wold complained of herein were done on his own behalf and on behalf of his marital community.

**Mr. Somers' First Job at Alpha**:

8. Mr. Somers began working for Alpha on March 5, 2012, and he was terminated effective February 19, 2013. From the beginning of his employment through November 9, 2012, Mr. Somers assisted with the soil analysis service that Alpha provided to its clients ("**First Job**").

9. Randy Smith (Sr. Geotechnical Engineer) was Mr. Somers' supervisor during his First Job.

10. Some of Alpha's clients retain Alpha to provide soil analysis as part of their construction planning. The characteristics of the soil on a particular parcel of land can impact how buildings or facilities should be constructed on the parcel. For example, the relative amounts of sand, silt, clay and gravel in soil determine how the soil will expand, settle, or shift over time, which can impact construction. As another example, soil with high concentrations of sulfate or chloride may cause damage to concrete and rebar used in construction. Consequently, construction companies and land developers commonly obtain a soil analysis prior to commencing construction, so that they can adapt their construction techniques to best suit the characteristics of the soil.

11. Alpha submits competitive bid proposals to potential clients. During the period relevant to this lawsuit, Mr. Smith typically prepared bid proposals for Alpha's clients. Mr. Smith sometimes asked Mr. Somers to review bid proposals to check for typographical errors or other obvious errors.

-3-

12. Once Alpha had secured a soil analysis contract, Mr. Smith would contact an outside drilling company to assist with collecting soil samples. Mr. Somers made no decisions regarding which drilling company to retain and he did not negotiate with the drilling companies.

13. Mr. Smith also scheduled soil sample collection with the drilling company. Mr. Somers made no decisions regarding when to schedule this work.

14. Mr. Smith assigned Mr. Somers to work with the drilling company to complete soil sample collection. The drilling company would drill holes in the soil, and Mr. Somers would collect and label the soil samples as the soil was brought to the surface by the drill.

15. Mr. Somers had no experience in collecting soil samples prior to working for Alpha. Consequently, at the beginning of his employment, Mr. Somers received instructions from Mr. Smith regarding how to collect soil samples. Mr. Somers complied with those instructions.

16. Mr. Smith told Mr. Somers that it was "industry standard" to drill one hole for every five acres of land. Thus, on a 100-acre parcel, Alpha would collect soil samples from 20 holes. Mr. Smith further instructed Mr. Somers to spread the holes out roughly evenly over the parcel.

17. Mr. Smith also instructed Mr. Somers to collect samples from various depths, typically going as deep as 15 feet below the surface. In particular, Mr. Smith instructed Mr. Somers to take a soil sample whenever the soil changed color or texture, because that could indicate a variation in soil characteristics.

-4-

18. Mr. Somers delivered soil samples to Alpha's in-house laboratory. The laboratory performed a variety of tests on the soil samples to determine soil characteristics. For example, the laboratory determines the amount of clay in the soil, and how much the clay expands when wet. The laboratory also determines the relative amounts of sand, gravel, silt, and clay in the soil, which influences how the soil should be compacted prior to construction. Mr. Somers played no role determining which tests to conduct or interpreting test results.

19. Alpha prepares a report for the client based on the laboratory's testing results ("**Client Report**").

20. While Mr. Somers was working in his First Job, Mr. Smith prepared most Client Reports.

21. On some occasions, Mr. Smith instructed Mr. Somers to prepare a Client Report. Mr. Somers would then submit a draft report to Mr. Smith for his review and approval.

22. While Mr. Somers was working in his First Job, all Client Reports went out under Mr. Smith's signature and under his Professional Engineer license.

23. Alpha maintains a Client Report template that largely dictates the form and substance of Client Reports. For example, the template includes two paragraphs regarding sulfate content in the soil. If sulfate content is above a certain threshold (as determined by Alpha's laboratory), then the "high sulfate" paragraph is included in the Client Report. On the other hand, if the sulfate content is below the threshold, then the "okay sulfate" paragraph is included in the Client Report.

24. Mr. Somers played no role in developing or revising the Client Report template.

25. Mr. Somers submitted weekly time sheets to Mr. Smith, who then reviewed and approved the time.

26. While working in his First Job, Mr. Somers regularly worked more than 40 hours per week.

27. During the summer of 2012, it was common for Mr. Somers to meet the drilling company in the field to start work as early as 5:00 a.m., so that they could avoid working outdoors during the hottest part of the day. Alpha also required Mr. Somers to keep "normal hours," meaning that he had to continue working until 5:00 p.m. Consequently, during the summer of 2012, it was common for Mr. Somers to work about 60 hours per week.

28. While working in his First Job, Mr. Somers received a salary of $50,000 annually. He received no commissions or any other form of compensation in addition to his salary.

29. While working in his First Job, Mr. Somers did not supervise other employees. For example, he made no decisions or recommendations regarding disciplining other employees.

30. While working in his First Job, Mr. Somers did not hire or fire other employees, and made no recommendations regarding hiring or firing other employees.

31. While working in his First Job, Mr. Somers made no decisions regarding work schedules for other employees.

-6-

**Mr. Somers' Second Job at Alpha**:

32.  On or about November 12, 2012, Mr. Somers began supervising about six technicians who performed construction inspections ("**Second Job**").

33.  On Friday, February 15, 2013, Mr. Somers sent an email to Defendant Alf Wold regarding a technician named Eloy Gonzalez.  Mr. Wold had instructed Mr. Gonzalez to perform certain work "off the clock" and Mr. Somers advised Mr. Wold that it was not lawful to require Mr. Gonzalez to work "off the clock."  Mr. Wold responded by defending his action and scolding Mr. Somers.

34.  Defendants terminated Mr. Somers on Tuesday, February 19, 2013, which was Mr. Somers' next day in the office following his email exchange with Mr. Wold regarding Mr. Gonzalez.

## COUNT ONE

### (Fair Labor Standards Act Overtime Claim)

35.  Mr. Somers incorporates by reference the allegations above.

36.  Mr. Somers was a covered "employee" and Alpha, Mr. Weaver, and Mr. Wold were Mr. Somers' "employers" as those terms are defined by the FLSA.

37.  Alpha is a covered "Enterprise engaged in commerce or in the production of goods for commerce" as that term is defined by the FLSA, 29 U.S.C. §§ 201-219.

38.  Alpha's annual gross volume of sales or business done was not less than $500,000.00 in the four calendar quarters preceding the filing of this complaint.

39.  Mr. Somers is a covered individual "engaged in commerce or in the production of goods for commerce" as that term is defined by the FLSA.

40. While working in his First Job, Mr. Somers was a nonexempt employee under the FLSA.

41. Defendants are aware or should have been aware that federal law required them to pay overtime to Mr. Somers, while he was working in his First Job, for all time worked in excess of 40 hours per week.

42. Alpha did not make a good-faith effort to ascertain and comply with its obligations under the FLSA.

43. Mr. Somers has suffered economic damages as a result of Defendants' unlawful compensation practice and is entitled to statutory remedies provided pursuant to the FLSA, including unpaid overtime compensation, liquidated damages, pre and post judgment interest, attorneys' fees and costs.

## COUNT TWO

### (Retaliation in Violation of FLSA)

44. Mr. Somers incorporates by reference the allegations above.

45. As set forth above, Defendants terminated Mr. Somers for filing an internal complaint alleging that Defendants decision to require an employee to work "off the clock" was unlawful. Pursuant to FLSA, 29 U.S.C. § 215(a)(3), it is unlawful to discharge or in any other manner discriminate against any employee because such employee has filed such an internal complaint. *See Lambert v. Ackerley,* 180 F.3d 997, 1004 (9th Cir. 1999) (en banc) (finding that § 215(a)(3) covered internal complaints).

46. As a result of Defendants' retaliatory conduct, Mr. Somers has suffered emotional distress and mental anguish, and has lost past and future wages

47. As a result of Defendants' retaliatory conduct, Mr. Somes is entitled to compensatory damages, punitive damages, attorneys' fees and costs, and all other legal or equitable relief permitted under 29 U.S.C. § 216.

## COUNT THREE

### (Arizona Wage Claim)

48. Mr. Somers incorporates by reference the allegations above.

49. Defendants' failure to pay Mr. Somers all overtime wages earned constitutes a violation of A.R.S. § 23-352, entitling him to an award of treble damages pursuant to A.R.S. § 23-355.

50. Defendants were not legally entitled to withhold any wages that Mr. Somers earned for the actual hours he worked.

## REQUESTED RELIEF

## COUNT ONE

A. For the Court to find that Defendants violated the overtime provisions of the FLSA;

B. For an award of damages of unpaid overtime, plus an equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

C. For an award of Mr. Somers' reasonable attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b); and

D. For an award of pre and post judgment interest on all compensation due.

## COUNT TWO

A. For the Court to find that Defendants retaliated against Mr. Somers for submitting an internal complaint challenging Defendants' unlawful pay practices;

B. For an award of damages for emotional distress, mental anguish, and lost past and future wages, in an amount to be proven at trial;

C. For an award of attorneys' fees and costs; and

D. For an award of pre and post judgment interest.

## COUNT THREE

A. For an award of damages including the wages owed, interest thereon, and an additional amount equal to twice the unpaid wages, pursuant to A.R.S. § 23-355;

B. For an award of attorneys' fees and costs; and

C. For an award of pre and post judgment interest.

## DEMAND FOR JURY TRIAL

Mr. Somers demands a jury trial to the extent authorized by law.

Dated this 27TH day of March, 2013

Matheson & Matheson, PLC

By: */s/ Darrel S. Jackson*